## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA,
## ATLANTA DIVISION

| | |
|---|---|
| PAUL PARSHALL,<br><br>Plaintiff,<br><br>vs.<br><br>CADENCE BANCORPORATION, PAUL B. MURPHY, JR., PRECIOUS W. OWODUNNI, MARC J. SHAPIRO, J. THOMAS WILEY, JR., JOSEPH W. EVANS, J. RICHARD FREDERICKS, WILLIAM B. HARRISON, JR., VIRGINIA A. HEPNER, and KATHY N. WALLER,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Paul Parshall ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Cadence Bancorporation ("Cadence" or the "Company") and the members of its Board of Directors (the

"Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Cadence will be acquired by BancorpSouth Bank ("BancorpSouth") (the "Proposed Transaction").

2.     On April 12, 2021, Cadence and BancorpSouth issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated April 12, 2021 (as amended on May 27, 2021, the "Merger Agreement") to sell Cadence to BancorpSouth.   Under the terms of the Merger Agreement, each Cadence stockholder will receive 0.70 shares of BancorpSouth common stock for each share of Cadence common stock they own (the "Merger Consideration").   The Proposed Transaction is valued at approximately $2.8 billion.

3.     On July 7, 2021, Cadence filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.   The Proxy Statement, which recommends that Cadence stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) BancorpSouth's and the pro forma company's financial projections and the data and inputs underlying the financial analyses performed by the Company's financial

advisors, Goldman Sachs & Co. LLC ("Goldman") and J.P. Morgan Securities LLC ("J.P. Morgan"); and (ii) potential conflicts of interest faced by the Company's additional financial advisor, Piper Sandler & Co. ("Piper Sandler").  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Cadence stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.     In short, unless remedied, Cadence's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this

District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) defendants maintain and operate several retail branches in this District; (ii) the Company's primary subsidiary Cadence Bank, N.A. ("Cadence Bank" or the "Bank") is headquartered in Atlanta, Georgia; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Cadence.

9.      Defendant Cadence is a Delaware corporation, with its principal executive offices located at 2800 Post Oak Boulevard, Suite 3800, Houston, Texas 77056.  Cadence is a financial holding company and the parent company of Cadence Bank, a middle-market focused commercial relationship bank headquartered in Atlanta, Georgia.   Cadence's common stock trades on the New York Stock Exchange under the ticker symbol "CADE."

10.     Defendant Paul B. Murphy, Jr. ("Murphy") is the Company's Chairman and Chief Executive Officer ("CEO") and has been a director of the Company since 2011.

11.     Defendant Precious W. Owodunni ("Owodunni") has been a director of the Company since 2019.

12.     Defendant Marc J. Shapiro ("Shapiro") has been a director of the Company since 2018.

13.     Defendant J. Thomas Wiley, Jr. ("Wiley") is Chairman of the Board of Directors of Cadence Bank and has been a director of the Company since 2019.

14.     Defendant Joseph W. Evans ("Evans") is Vice Chairman of the Board and has been a director of the Company since 2019.

15.     Defendant J. Richard Fredericks ("Fredericks") has been a director of the Company since 2017.

16.     Defendant William B. Harrison, Jr. ("Harrison") is Lead Director of the Board and has been a director of the Company since 2017.

17.     Defendant Virginia A. Hepner ("Hepner") has been a director of the Company since 2019.

18.     Defendant Kathy N. Waller ("Waller") has been a director of the Company since 2019.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     BancorpSouth is a Mississippi state-chartered bank headquartered in Tupelo, Mississippi.   BancorpSouth has commercial banking, mortgage and insurance operations in Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Missouri, Tennessee and Texas, and one loan production office in Durant, Oklahoma.  BancorpSouth's insurance agency subsidiary also operates an office in Illinois.   BancorpSouth and its insurance agency subsidiary provide commercial banking, leasing, mortgage origination and servicing, insurance, brokerage and trust services to corporate customers, local governments, individuals and other financial institutions through an extensive network of branches and offices. As of March 31, 2021, BancorpSouth had total assets of $25.8 billion, deposits of $21.2 billion, and shareholders' equity of $2.8 billion.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Formed in 2009, Cadence secured $1.0 billion of capital commitments in 2010 and built its franchise on the foundation established from three successful acquisitions: Cadence Bank in March 2011, the franchise of Superior Bank

("Superior Bank") in April 2011, and Encore Bank, N.A. ("Encore Bank") in July 2012.  Then, on January 1, 2019, the Company completed its merger with State Bank Financial Corporation ("State Bank Financial"), the holding company for State Bank and Trust Company ("State Bank").

22.    Cadence Bank operates 98 branch locations in Alabama, Florida, Georgia, Mississippi, Tennessee, and Texas, and provides corporations, middle-market companies, small businesses and consumers with a full range of innovative banking and financial solutions.  Services and products include commercial and business banking, treasury management, specialized lending, asset-based lending, commercial real estate, Small Business Administration lending, foreign exchange, wealth management, investment and trust services, financial planning, retirement plan management, payroll and insurance services, consumer banking, consumer loans, mortgages, home equity lines and loans, and credit cards.  Clients have access to leading-edge online and mobile solutions, interactive teller machines, and more than 55,000 ATMs.  The Cadence team of approximately 1,800 associates is committed to exceeding customer expectations and helping their clients succeed financially.  As of December 31, 2020, Cadence had $18.7 billion of assets, $12.7 billion of gross loans, $16.1 billion in deposits and $2.1 billion in shareholders' equity.

23.    On April 22, 2021, the Company announced its first quarter 2021 financial results.  For the quarter ended March 31, 2021, the Company reported net income of $106.4 million, or $0.84 per share, compared to a net loss of $399.3 million, or a loss of $3.15 per share, for the quarter ended March 31, 2020.  Adjusted net income, excluding non-routine income and expenses, was $104.7 million, or $0.83 per share for the quarter ended March 31, 2021, compared to $12.5 million, or $0.10 per share, for the quarter ended March 31, 2020.  The Board also declared a quarterly cash dividend in the amount of $0.15 per share of outstanding common stock, representing an annualized dividend of $0.60 per share.  Commenting on the Company's performance, defendant Murphy stated:

> We are excited to report a strong start to 2021 at Cadence. The bank extended our trend of excellent operating results with pre-tax, pre-provision revenue (PPNR) as a percent of assets at 1.86%.  As announced last week, we are very excited about the pending merger with BancorpSouth and it has been well received with our bankers, clients, and communities.

**The Proposed Transaction**

24.    On April 12, 2021, Cadence and BancorpSouth issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> TUPELO, Miss. and HOUSTON, April 12, 2021 -- BancorpSouth Bank (NYSE: BXS) ("BancorpSouth") and Cadence Bancorporation (NYSE: CADE) ("Cadence"), the parent company of Cadence Bank, N.A., jointly announced today that they have entered into a merger agreement under which the companies will combine in an all-stock

merger with a total market value of more than $6 billion to create a leading Texas and Southeastern regional bank.

Under the terms of the merger agreement, which was unanimously approved by the Boards of Directors of both companies, Cadence shareholders will receive 0.70 shares of BXS for each share of CADE they own. Additionally, the agreement allows for a one-time special cash dividend to CADE shareholders of $1.25 per share in conjunction with the closing of the merger. BancorpSouth shareholders will own approximately 55% and Cadence shareholders will own approximately 45% of the combined company.

The company will combine the aesthetics of both brands and logos and operate as Cadence Bank. The bank will have dual headquarters in Tupelo, MS and Houston, TX, with operations centers in Tupelo, MS and Birmingham, AL as well as specialty sites in Macon, GA; Starkville, MS; and Houston, TX.

Dan Rollins will be the Chairman and Chief Executive Officer and Paul Murphy will serve as Executive Vice Chairman of the combined company. The board of directors will initially be comprised of 20 directors – 11 from BancorpSouth and nine from Cadence.

Dan Rollins commented: "Cadence has built an impressive commercial banking franchise that when combined with the strengths of our team at BancorpSouth seems to be a perfect fit. This strategic merger will allow us to expand our reach and offerings with minimal overlap in our existing branch network. Culturally speaking, our mission and values align really well together. Mergers are all about people, and what's important to note here is that our leadership teams are in sync. By joining forces, it's easy to see that we'll be able to make a significant impact on our customers and communities while driving long-term shareholder value."

"I am thrilled to partner with BancorpSouth," said Paul Murphy. "I have great respect for the franchise they have built over the last 145 years, beginning in my home state of Mississippi. The BancorpSouth community banking franchise is top tier and complements Cadence's expertise in middle-market commercial banking seamlessly. We look

forward to delivering significant value to our shareholders, driven by meaningful synergies and our shared banking philosophy to put the client first.  I was impressed with the team at BancorpSouth early on, and I grow even more so the more I get to know them.  Like us, they really care about their people.  The scale of our combined bank, our collective talent, our similar cultures and our footprint in some of the fastest-growing markets in the country have us extremely excited about the future."

**Strategically Compelling for Both Organizations**

- Builds a stronger banking franchise with relationship-focused financial services and **better opportunities for employees, customers, communities and shareholders**.

- **Builds immediate scale in highly attractive markets throughout Texas and the Southeast**.  Creates the 5th largest bank headquartered in the combined nine-state footprint, with presence in seven of the top ten largest MSAs therein.

- **Combines BancorpSouth's community banking focus with Cadence's commercial banking expertise**.

- **Merges two historic institutions – BancorpSouth and Cadence have 145 and 134 years of experience, respectively**.

- **Positions the company for continued growth**.  Strengthens balance sheet, capital, and reserve levels, enabling continued growth trajectory.

- **Low-risk combination**.  Thorough mutual diligence performed on all key business areas with conservative overlay. Both companies have significant M&A integration expertise.

**Financially Attractive Metrics for Shareholders**

- **Significant earnings per share accretion**.  17% accretion to each of BancorpSouth's and Cadence's earnings per share in 2022 (assuming fully realized cost savings for illustrative

purposes) and 14% if 75% of cost savings are realized.

- **Tangible book value accretive**. Transaction expected to be immediately accretive to tangible book value per share at close.

- **Leading pro forma profitability**. Among a peer group of $30-$60 billion in asset banks nationwide, the combined company is estimated to have the 3rd best return on tangible common equity and efficiency ratio, based on consensus earnings estimates.

- **Robust capital and reserve coverage**. Pro forma CET 1 ratio of 11.3% and ACL / loans of 2.5% estimated at the close of the transaction.

## Beneficial for Customers, Communities and Employees

- Expands breadth of products and services available to customers.

- The combined companies will be able to make more investments in customized technology solutions.

- Environmental, social and governance principles are embedded in both cultures.

- Employees of the combined companies invested more than 24,000 service hours towards improving their communities.

## Executive Leadership

- Dan Rollins, Chairman and Chief Executive Officer

- Paul Murphy, Executive Vice Chairman

- Chris Bagley, President

- Hank Holmes, Chief Banking Officer

- Valerie Toalson, Chief Financial Officer

## Approval and Timing

- 11 -

The merger is expected to close in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including the receipt of customary regulatory approvals and approvals of shareholders of each company.

**Transaction Advisors**

Keefe, Bruyette & Woods, A Stifel Company, served as exclusive financial advisor to BancorpSouth, with Sullivan & Cromwell and Alston & Bird serving as legal advisors.

Goldman Sachs and J.P. Morgan served as lead financial advisors to Cadence and Piper Sandler also advised.  Wachtell, Lipton, Rosen & Katz served as legal advisor.

## Insiders' Interests in the Proposed Transaction

25.    Cadence insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Cadence.

26.    Notably, certain Company insiders will be selected to management positions with the surviving company.  For example, the board of directors of the surviving entity will include three former officers of Cadence.

27.    Moreover, in connection with the merger, BancorpSouth and each of defendant Murphy, R. H. "Hank" Holmes, IV ("Holmes"), and Valerie C. Toalson ("Toalson") entered into letter agreements (collectively, the "employment letter

agreements") with respect to the terms of their employment with the surviving company following the closing of the merger. The employment letter agreements provide that defendant Murphy will serve as the Executive Vice Chairman of the surviving entity, will be appointed to the surviving entity's board of directors effective as of the closing of the merger, and thereafter will be nominated to serve on the surviving entity's board of directors, with an annual base salary of $1,000,000; Holmes will serve as Chief Banking Officer of the surviving entity, with an annual base salary of $600,000; and Toalson will serve as Chief Financial Officer of the surviving entity, with an annual base salary of $550,000.

28.     Additionally, if they are terminated in connection with the Proposed Transaction, Cadence's executive officers stand to receive substantial cash severance payments. The estimated aggregate amount that would be realized by the five non-named executive officers upon the effective time and upon a qualifying termination in connection with the merger is $3,175,137 in the aggregate. The amounts that the Company's named executive officers would receive if they are terminated in connection with the merger are set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites / benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Paul B. Murphy, Jr. | $6,268,750 | $4,195,346 | $24,000 | $10,488,096 |
| Valerie C. Toalson | $2,225,000 | $2,019,125 | $27,000 | $ 4,271,125 |
| Samuel M. Tortorici | $3,575,000 | $2,120,530 | $51,000 | $ 5,746,530 |
| Rudolph H. Holmes, IV | $2,875,000 | $1,911,959 | $54,000 | $ 4,840,959 |
| Edward H. Braddock | $  815,683 | $  660,129 | $      — | $ 1,475,812 |

## **The Proxy Statement Contains Material Misstatements and Omissions**

29.     The defendants filed a materially incomplete and misleading Proxy

Statement with the SEC and disseminated it to Cadence's stockholders.  The Proxy

Statement misrepresents or omits material information that is necessary for the

Company's stockholders to make an informed decision whether to vote their shares

in favor of the Proposed Transaction.

30.     Specifically, as set forth below, the Proxy Statement fails to provide

Company stockholders with material information or provides them with materially

misleading information concerning: (i) BancorpSouth's and the pro forma

company's financial projections and the data and inputs underlying the financial

analyses performed by the Company's financial advisors, Goldman and J.P. Morgan;

and (ii) Piper Sandler's potential conflicts of interest.  Accordingly, Cadence

stockholders are being asked to vote in favor of the Proposed Transaction without

all material information at their disposal.

***Material Omissions Concerning BancorpSouth's and the Pro Forma Company's Financial Projections and Goldman's and J.P. Morgan's Financial Analyses***

31.     The Proxy Statement fails to disclose material information concerning the financial projections for BancorpSouth and the pro forma combined company.

32.     For example, according to the Proxy Statement, in connection with rendering its fairness opinion and performing its related financial analyses, Goldman reviewed:

- certain internal financial analyses and forecasts for BancorpSouth on a stand-alone basis as prepared by the management of BancorpSouth; and

- certain internal financial analyses and forecasts for Cadence on a stand-alone basis, and certain financial analyses and forecasts for BancorpSouth on a stand-alone basis and pro-forma for the proposed merger, in each case, as prepared by the management of Cadence and approved for Goldman Sachs' use by Cadence[.]

Proxy Statement at 75-76.  Similarly, the Proxy Statement sets forth that, in arriving at its fairness opinion, J.P. Morgan "reviewed certain internal financial analyses and forecasts prepared by the management of BancorpSouth relating to BancorpSouth's business on a stand-alone basis[.]"  *Id.* at 84-85.  Yet, the Proxy Statement fails to disclose BancorpSouth management's internal financial analyses and forecasts relied upon by Goldman and J.P. Morgan, as well as Cadence management's forecasts for BancorpSouth pro-forma for the proposed merger, utilized by Goldman in connection with its analyses.

33.     The Proxy Statement also fails to disclose material information concerning Goldman's and J.P. Morgan's financial analyses.

34.     The Proxy Statement describes Goldman's and J.P. Morgan's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Goldman's and J.P. Morgan's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Cadence's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's and J.P. Morgan's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

35.     With respect to Goldman's *Illustrative Present Value of Future Stock Price Analysis for Cadence on a Stand-Alone Basis*, *Illustrative Present Value of Future Stock Price Analysis for BancorpSouth on a Stand-Alone Basis*, and *Illustrative Present Value of Future Stock Price Analysis for Cadence Shares on a Pro Forma Basis*, the Proxy Statement fails to disclose: (i) the estimates of EPS of BancorpSouth on a pro forma basis for 2022, 2023, and 2024; (ii) the estimated dividends to be paid per share of BancorpSouth common stock on a pro forma basis; and (iii) quantification of the inputs and assumptions underlying the discount rate of

13% for Cadence, 9.0% for BancorpSouth, and 10.75% for BancorpSouth on a pro forma basis.

36.    With respect to Goldman's *Illustrative Discounted Dividend Analysis for Cadence on a Stand-Alone Basis*, *Illustrative Discounted Dividend Analysis for BancorpSouth on a Stand-Alone Basis*, and *Illustrative Discounted Dividend Analysis for Cadence on a Pro Forma Basis* the Proxy Statement fails to disclose: (i) the implied distributions to BancorpSouth shareholders on a pro forma basis, over the period beginning December 31, 2020 through December 31, 2025; (ii) the pro forma company's terminal year net income; (iii) quantification of the terminal values of Cadence, BancorpSouth and the pro forma company; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 10.5% to 15.5% for Cadence, 8.0% to 10.0% for BancorpSouth and 9.50% to 12.50% for BancorpSouth pro forma; and (v) the filly diluted outstanding shares of Cadence, BancorpSouth and the pro forma company, used by Goldman in its respective analyses.

37.    With respect to Goldman's *Regression Analysis for Cadence on a Stand-Alone Basis*, *Regression Analysis for BancorpSouth on a Stand-Alone Basis*, and *Regression Analysis for Cadence Shares on a Pro Forma Basis* the Proxy Statement fails to disclose: (i) the pro forma company's 2022 estimated return on

average tangible common equity; and (ii) Cadence's, BancorpSouth's and the pro forma company's respective tangible book value ("TBV") per share as of December 31, 2021.

38.     With respect to J.P. Morgan's *Public Trading Multiples Analysis – Cadence Standalone* and *Public Trading Multiples Analysis – BancorpSouth Standalone*, the Proxy Statement fails to disclose Cadence's and BancorpSouth's respective TBV per share as of December 31, 2020, utilized in the analyses.

39.     With respect to J.P. Morgan's *Dividend Discount Analysis - Cadence Stand-Alone* and *Dividend Discount Analysis - BancorpSouth Stand-Alone*, the Proxy Statement fails to disclose: (i) Cadence's and BancorpSouth's estimated adjusted net income for the terminal year (2026); (ii) quantification of the terminal values of Cadence and BancorpSouth; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 11.0% to 13.0% for Cadence and 10.0% to 12.0% for BancorpSouth.

40.     With respect to J.P. Morgan's *Analyst Share Price Targets for Cadence* and *Analyst Share Price Targets for BancorpSouth* analyses, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

41.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of Cadence's Financial

Advisors" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Piper Sandler's Potential Conflicts of Interest***

42.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Piper Sandler.

43.     For example, the Proxy Statement fails to disclose material information regarding Piper Sandler's engagement, including: (i) the amount of compensation Piper Sandler has received or will receive in connection with its engagement; (ii) the amount of Piper Sandler's compensation contingent upon the consummation of the Proposed Transaction; (iii) whether Piper Sandler has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by Piper Sandler for providing such services.

44.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

45.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the

foregoing material information prior to the stockholder vote on the Proposed

Transaction, Plaintiff and the other stockholders of Cadence will be unable to make

a sufficiently informed voting decision in connection with the Proposed Transaction

and are thus threatened with irreparable harm warranting the injunctive relief sought

herein.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

46.     Plaintiff repeats all previous allegations as if set forth in full.

47.     During the relevant period, defendants disseminated the false and

misleading Proxy Statement specified above, which failed to disclose material facts

necessary to make the statements, in light of the circumstances under which they

were made, not misleading in violation of Section 14(a) of the Exchange Act and

SEC Rule 14a-9 promulgated thereunder.

48.     By virtue of their positions within the Company, the defendants were

aware of this information and of their duty to disclose this information in the Proxy

Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by

the defendants.  It misrepresented and/or omitted material facts, including material

information about BancorpSouth's and the pro forma company's financial

projections, the financial analyses performed by the Company's financial advisors and potential conflicts of interest faced by the Company's additional financial advisor.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

50.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

52.     Plaintiff repeats all previous allegations as if set forth in full.

53.     The Individual Defendants acted as controlling persons of Cadence within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Cadence, and participation in and/or

awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

56.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and

approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Cadence' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Cadence, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the

material information identified above to Cadence stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 27, 2021                     **WEISSLAW LLP**

                                         /s/ Michael A. Rogovin
                                         Michael A. Rogovin
                                         Georgia Bar No. 780075
                                         476 Hardendorf Ave. NE
                                         Atlanta, GA 30307
                                         Tel.: (404) 692-7910
                                         Fax: (212) 682-3010
                                         mrogovin@weisslawllp.com
                                                   -and-
                                         Richard A. Acocelli
                                         1500 Broadway, 16th Floor
                                         New York, NY 10036
                                         Telephone: 212/682-3025
                                         Facsimile: 212/682-3010

                                         *Attorneys for Plaintiff*